UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL ABRAHAM MISENER, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-269-RLM |
| MARSHALL COUNTY SHERIFF DEPT., et al., | |
| Defendants. | |

OPINION AND ORDER

Michael Abraham Misener, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding "on a Fourteenth Amendment claim for money damages against Sheriff Hassell and Sergeant Holcomb for subjecting him to overcrowded conditions since August 15, 2019[.]" ECF 4 at 3. Second, he is proceeding "on a Fourteenth Amendment claim against the Marshall County Sheriff's Department for maintaining a policy or practice of assigning inmates to sleep on the floor[.]" *Id.* Mr. Misener alleged that the defendants subjected him to overcrowded housing conditions at Marshall County Jail by placing an additional inmate in each cell, which (1) created a trip hazard, (2) temporarily denied him access to recreation and showers, (3) forced him to eat on the floor or toilet due to a lack of available seating, and (4) forced some inmates to sleep on the ground.

With their summary judgment motion, the defendants provided Mr. Misener the notice required by N.D. Ind. L.R. 56-1(f). ECF 34. Copies of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1 were attached to the

notice. Under Local Rule 56-1(b)(1), "[a] party opposing [a summary judgment] motion must, within 28 days after the movant serves the motion, file and serve (A) a response brief; and (B) any materials that the party contends raise a genuine dispute."[1] This deadline passed almost six months ago, but Mr. Misener has not responded. Therefore the court will now rule on the defendants' summary judgment motion.

## I.   FACTS

The defendants submitted affidavits attesting to the following information.[2]

<u>Overcrowding at Marshall County Jail</u>

The Marshall County Jail was constructed in 2008 and has 230 permanent beds. The Jail's average daily population began to rise sharply in 2018, raising concerns about potential overcrowding. Sheriff Hassell alerted and met with various county officials to discuss potential remedies to bring the jail population down. Beginning in late 2018, Sheriff Hassell and county officials discussed and implemented various remedies to reduce the jail population, including: (1) making arrangements to transfer inmates to a different county; (2) expediting the implementation of Indiana Criminal Rule 26 for assessment and release of pretrial

---

[1] Local Rule 56-1 was amended on February 25, 2022. Because the defendants' summary judgment motion was filed before that date, the prior version of Local Rule 56-1 applies.

[2] Because Mr. Misener didn't respond to the summary judgment motion, the Court accepts the facts alleged in the defendants' affidavits as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ..")

2

detainees; (3) reducing sentences of currently incarcerated county inmates; (4) adding deputy prosecutors; (5) adding a fourth court to the County; and (6) constructing an addition to the Marshall County Jail that would house an additional 300 inmates. Many of these options couldn't be implemented immediately and required various steps and the allocation of resources to accomplish.

The average daily population continued to rise in 2019 while the jail worked toward implementing these remedies. The average daily population was 218.5 in January 2019; the average daily population was 232.1 in February; it was 240.7 in March; 232.4 in April; 238.3 in May; 247.3 in June 2019, at which point, the permanent bed capacity was considered to be exceeded at the facility; in July the average daily population was 260.0; in August 2019 it was 291.6; it was 285.6 in September; 287.3 in October; down to 272.3 in November; and 254.7 in December 2019.

The downward trend in November and December 2019 might have been due to increasing implementation of remedies to reduce the jail population. The downward trend continued in 2020: in January 2020 the average daily population was 249.7; in February it was 233.9; in March it 210.9; in April the average daily population dropped to 183.5; it was down to 151.5 in May; it was 151.9 in June, 151 in July, and 161 in August. The Marshall County Jail population has remained below 230 since February 24, 2020. *Id.* at 6.

Jail officials made several temporary adjustments to the facility to house the surplus of inmates. In June 2019, Chief Jail Officer Holcomb started adding floor

3

space bed assignments by placing one additional inmate in the four-man cells. Officer Holcomb determined adding an inmate to the four-man cells would be the safest option because those cells have the greatest floor space and the inmates would be secured during lockdown hours. *Id.* Inmates assigned to the floor in a four-man cell were given mats they could place anywhere in the cell. Most inmates put the mat in the center floor space between the permanent bunks, which lessened the space available for the inmates in the bunks but didn't entirely obstruct their path. Inmates in the permanent bunks were free to get out of their beds at the head or foot, so they didn't have to navigate around the inmate on the floor Inmates in general population were free to spend most hours of the day out of their cell in the dayroom.

In the summer of 2019, Officer Holcomb created additional sleeping space by adding bunks in the inmate worker dorm style pod and turning the recreation room into a temporary housing unit. Officer Holcomb ordered, received, and distributed additional portable bunks in September 2019. Because each pod contains the same number of dayroom seats as permanent bunks, the addition of one extra inmate in each four-man cell resulted in a shortage of dayroom seating. As a result, when the dayroom had no available seats, the inmates were allowed to sit on their bunks, stand at the tables, or wait for space at one of the dayroom tables to eat their meals. No inmate was ever forced to sit on the floor or on the toilet to eat.

<u>Mr. Misener's Incarceration at Marshall County Jail</u>

Mr. Misener was housed in the Jail from August 15, 2019, to December 16, 2020. Mr. Misener was kept in the main booking area of the facility from August 15

4

to 23, 2019, until he could be classified and assigned to general population. From August 23 to November 19, 2019, Mr. Misener was primarily assigned a bunk in cell in 1480 Pod, with several temporary reassignments to disciplinary pods. A fifth inmate was assigned to Mr. Misener's cell during this timeframe. On November 27, 2019, Mr. Misener was reassigned to a bunk in a cell in 1470 Pod. There was a fifth inmate assigned Mr. Misener's cell during that time. Mr. Misener remained that cell until March 1, 2020, when the Jail's inmate population returned to under capacity.

## II.   ANALYSIS

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion can't rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture

5

will not suffice." Trade Fin. Partners, LLC v. AAR Corp., 573 F.3d 401, 407 (7th Cir. 2009).

Because Mr. Misener filed this action as a pretrial detainee, the court must assess his claims under the Fourteenth Amendment instead of the Eighth Amendment. *See* Mulvania v. Sheriff of Rock Island Cty., 850 F.3d 849, 856 (7th Cir. 2017). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Id.* (quotation marks omitted). "A pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment." *Id.* A pretrial detainee can "prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015); *see also* Hardeman v. Curran, 933 F.3d 816, 823 (7th Cir. 2019) (extending *Kingsley's* objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees).

Mr. Misener alleged in his complaint the defendants violated his rights by housing an excess inmate in each cell, which (1) created a trip hazard; (2) temporarily denied him access to recreation and showers; (3) forced him to eat on the floor or toilet due to a lack of available seating; and (4) forced some inmates to sleep on the ground. The defendants argue summary judgment should be granted in their favor because

6

their efforts to address the overcrowding of the jail were objectively reasonable in light of the surrounding circumstances. They argue they reasonably accommodated all inmates while taking affirmative steps to reduce the jail population.

The jail's decision to place an additional inmate in each cell was rationally related to its objective of safely housing the surplus of inmates while the jail enacted large-scale remedies to reduce the jail population. *See* Kingsley v. Hendrickson, 576 U.S. at 398. Mr. Misener offers no evidence the defendants' conduct was punitive, arbitrary, or purposeless. *See* Mulvania v. Rock Island Sheriff, 850 F.3d at 856. Moreover, Mr. Misener has offered no evidence supporting the specific allegations in his complaint. *See* Goodman v. N.S.A., 621 F.3d at 654 (a party opposing a summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case"). Mr. Misener offers no evidence his housing arrangement created a trip hazard, and the defendants provide attestations and photographs demonstrating the inmates still had room to maneuver in the cells with the addition of the extra bunk. Mr. Misener provides no facts or evidence regarding his assertion he was temporarily denied access to recreation and showers. Mr. Misener offers no evidence he ever received a floor assignment, and any assertion that inmates were forced to sleep by the toilet on the floor are refuted by the defendants' photographic evidence showing that portable bunks and floor mats could be placed the same distance away from the toilets as the permanent bunks. Mr. Misener offers no evidence he was forced to sit on the toilet to eat his meals, and the defendants attest Mr. Misener wasn't told

or forced to eat his meals while sitting on the toilet and was free to eat at his bunk, stand at a table, or wait for a space to open up at one of the dayroom tables to eat his meals.

The summary judgment record contains no evidence by which a reasonable jury could conclude that (1) Sheriff Hassell and Sergeant Holcomb violated Mr. Misener's Fourteenth Amendment rights by subjecting him to overcrowded conditions since August 15, 2019, or (2) the Marshall County Sheriff's Department violated his Fourteenth Amendment rights by maintaining a policy or practice of assigning inmates to sleep on the floor. Summary judgment is warranted in favor of the defendants on both of Mr. Misener's claims.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 32); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Michael Abraham Misener.

SO ORDERED on April 28, 2022

/s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT

8